IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBORAH DAVIDSON, | : | **CIVIL ACTION NO. 2:20-cv-01641** |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| THE PEGGS COMPANY, INC., | : | The Honorable Patricia L. Dodge |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

_____

**MEMORANDUM OF LAW OF DEFENDANT, THE PEGGS COMPANY, INC. IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56(a)**

Defendant, The Peggs Company, Inc. submit the following Memorandum of Law in support of their Motion for Summary Judgment.

## I.   RELEVANT BACKGROUND

Plaintiff alleges on February 20, 2020, she tripped on a the rear caster of a shopping cart manufactured by the Defendant, The Peggs Company Inc., while shopping at the TJ Maxx located at 1717 Route 228, Cranberry Twp., PA 16066.  Plaintiff alleges this shopping cart is defective and dangerous because the wheel of the cart extends 2 and ¼ inches beyond the handle of the cart.

Plaintiff has been to this same TJ Maxx about every week for the past 20 years.  She has used a two tier cart occasionally while shopping there. Plaintiff had been shopping with this two-tiered shopping cart for at least an hour before the incident occurred. While in the checkout line, plaintiff was talking to a lady behind her and then saw a tea towel hanging on a display and

1

turned to go and tripped and fell on the shopping cart.  Plaintiff did not see where her foot came into contact with the shopping cart.  The incident was caught on video by the TJ Maxx surveillance video.

## II.        RELEVANT PROCEDURAL HISTORY

Plaintiff commenced this action by Complaint on October 7, 2020, in the Court of Common Pleas of Allegheny County Pennsylvania.  On October 28, 2020, Defendant, The Peggs Company, Inc. filed a Notice of Removal to the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. § 1332.  On October 25, 2021, your Honor signed a Scheduling Order closing discovery on December 31, 2021.  Therefore, The Pegg's Company Inc.'s Motion for Summary Judgment is ripe for review.

## III.       LEGAL ARGUMENT

Plaintiff fails to set forth a prima facie claim that defendant, The Peggs Company, Inc.'s two tiered shopping cart is a design defect, lacked adequate warnings and was negligent. In addition, plaintiff's own contributory negligence is a bar to the negligence claim.

### A.  Summary Judgment Standard

Summary judgment, F.R.C.P. 56(a), is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A fact is material if it must be decided in order to resolve the substantive claim or defense to which the motion is directed. In other words, there is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The Court must view the evidence presented in the light most favorable to the nonmoving party. *Id.* at 255.

2

Under the summary judgment analysis, "Where the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the admissible evidence contained in the record would be insufficient to carry the nonmoving party's burden of proof." *Ins. Co. of Greater N.Y. v. Fire Fighter Sales & Serv. 's Co.*, 120 F. Supp. 3d 449, 456 (W.D. Pa. 2015) (citing *Celotex Corp.*, 477 U.S. at 322). "Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond his or her pleadings and designate specific facts by the use of affidavits, depositions, admissions or answers to interrogatories showing that there is a genuine issue of material fact for trial." *Id.* (citing *Celotex Corp.*, 477 U.S. at 324).

**B.  Plaintiffs Fail to Set Forth a Prima Facie Claim that The Peggs Shopping Cart is a Design Defect**

**1.  Consumer Expectation Test**

"The consumer expectations test defines a "defective condition" as a condition, upon normal use, dangerous beyond the reasonable consumer's contemplations. See, e.g., Welch, 481 F.2d at 254; see also David G. Owen, PRODUCTS LIABILITY LAW, at § 5.6 (Hornbook Series) (2d ed. 2008) (hereinafter referred to as "Owen, HORNBOOK") (describing provenance and alternative formulations)." *Tincher v. Omega Flex*, 628 Pa. 296, 394-95, 104 A.3d 328, 387 (2014)

"The product is not defective if the ordinary consumer would reasonably anticipate and appreciate the dangerous condition of the product and the attendant risk of injury of which the plaintiff complains (*e.g.*, a knife). *Id.*

The **nature of the product**, **the identity of the user**, **the product's intended use** and **intended user**, and any **express or implied representations by a manufacturer** or other seller are among considerations relevant to assessing the reasonable consumer's expectations. See, e.g., Mikolajczyk, 901 N.E.2d at 336; Jarke v. Jackson Prods., 258 Ill. App. 3d 718, 631 N.E.2d 233, 238-40, 197 Ill. Dec. 230 (Ill. App.

1st Dist. 1994)." *Tincher v. Omega Flex*, 628 Pa. 296, 394-95, 104 A.3d 328, 387 (2014) (emphasis added).

    a. <u>Nature of the Product</u>

The product in this case is a two-tiered shopping cart. It, like most shopping carts, has a handle forward of the wheels. The basis for the placement of the handle forward of the wheels is to prevent rear tip overs while a child is seated in the rear child seat of the cart, located at the handle. See further analysis of shopping cart design in Defendant's Expert John Morse's report regarding shopping cart design Exhibit "H" at p. 14-19 and materials reviewed for shopping cart injuries to children, American Academy of Pediatrics technical report and Washington Post Article on 24,000.00 kids hurt annually in shopping cart incidents.

    b. <u>Identity of the User</u>

The identity of the user of shopping carts are older teenagers to adults of all ages that go shopping. Specifically in this matter, the plaintiff is an adult, with a date of birth of March 28, 1953. Plaintiff is an experienced and avid shopper. By her own testimony, she has been to this specific TJ Maxx (not including her other shopping) "about every week for 20 years" <u>See</u> Plaintiff's Deposition Transcript, Exhibit "B", at page 18. As she further puts it, "I'm a shopper, so – I mean, no one in my family wants to go shopping with me because I just go to look sometimes." *Id.*

    c. <u>Product's Intended use and Intended User</u>

The products intended use is to have customers place items in the cart to transport them to checkout instead of carrying all the items themselves. The two-tiered shopping cart's use is to allow the customer to purchase less items than a single tiered cart, but to move easier within a store with less weight, size and wheelbase than a single tiered cart. The two-tiered cart therefore provides the customer with easier handling to move around a store.

15601301-1

The intended user in this matter and those users of two-tiered shopping carts can be of older teenagers to all adults.  The cart specifically in this matter also has a child seat which would allow adults to safely place children in while shopping within the store.

    d.   <u>Express or implied representations by the manufacturer</u>

As this is a two-tiered shopping cart within the TJ Maxx, there is no such evidence in the record of an express representation by the manufacturer, The Peggs Company, Inc.. Additionally, there is no such implied warranty.  If there is such a warranty it would be to operate as it did and as it has for plaintiff in the past as a normal manually operated shopping cart.

Accordingly, this is not a defective two-tiered shopping cart as "the ordinary consumer would reasonably anticipate and appreciate the dangerous condition of the product and the attendant risk of injury of which the plaintiff complains."  *Tincher v. Omega Flex*, 628 Pa. 296, 394-95, 104 A.3d 328, 387 (2014). <u>See</u> also variances of shopping carts in the greater Pittsburgh area in the expert report of John S. Morse Exhibit "H" p. 12-13, ranging from 3/8 inch to 3 and 3/8 inch for handles forward of the rear wheels. Nor is The Peggs Company Inc.'s cart an outlier in this matter as the Bemis cart located at the Giant Eagle Market District, has the handle 3 and 3/8 forward of the wheels. *Id* at p. 13. The variance in handle distance to the wheels is minimal in the two-tiered shopping cart market place, especially those which have a child seat, as this is a matter of an inches or less than an inch in some cases. This is something any ordinary consumer would reasonably anticipate when they themselves choose the cart they shop with.  These differences in handle to wheel distances for two tiered-shopping carts are not beyond the reasonable consumer's contemplations and therefore not a defect.

    **2.**   **<u>Failure To Warn Standards In Pennsylvania.</u>**

Pennsylvania recognizes strict liability for failure to warn under the Restatement (Second) of Torts.  *See Pavlik v. Lane Ltd.,* 135 F.3d 876, 881 (3d Cir. 1998).  Accordingly, an "otherwise properly designed product may still be unreasonably dangerous (and therefore 'defective') for strict liability

purposes [in Pennsylvania] if the product is distributed without sufficient warnings to apprise the ultimate user of the latent dangers of the product." *Id.* (citing Restatement (Second) of Torts § 402A). To prevail under this theory, a "plaintiff must prove (1) that the product was defective, (2) that the defect existed when it left the hands of the defendant, and (3) that the defect caused the harm." *Riley v. Warren Mfg., Inc.,* 688 A.2d 221, 224 (Pa. Super. 1997); *see also Walton v. Avco Corp.*, 610 A.2d 454, 458 (Pa. 1992).

In a failure-to-warn case, the threshold determination is whether the product is defective for lack of sufficient warnings. A plaintiff therefore must show that the product was sold without sufficient warnings to "adequately notify the intended user of the unobvious dangers inherent in the product." *Mackowick v. Westinghouse Elec. Corp.,* 575 A.2d 100, 102 (Pa. 1990). Furthermore, he or she may recover only if "the lack of warning rendered the product unreasonably dangerous." *Baron v. Lowe's Home Ctrs., Inc.,* 124 A.3d 349, 355 (Pa. Super. 2015). A plaintiff must also establish the causation element in that the user of the product would have avoided the risk had he or she been warned of it by the seller. *See Phillips v. A-Best Prods. Co*., 665 A.2d 1167, 1171 (Pa. 1985)(*citing Sherk v. Daisy-Heddon*, 450 A.2d 615, 617-619 (Pa. 1982)(plurality opinion).[1]

---

[1] The Pennsylvania Supreme Court's decision in *Tincher v. Omega Flex, Inc.,* 104 A.3d 328 (Pa. 2014), has raised a question regarding the respective roles of the judge and jury in making the initial determination about the adequacy of a warning. Before *Tincher,* it was well settled in Pennsylvania that the adequacy of a warning was a question of law for the court. *See Azzarello v. Black Bros. Co.,* 391 A.2d 1020 (Pa. 1978), and *Mackowick, supra.* In *Azzarello,* the Pennsylvania Supreme Court created a two-step process for adjudicating defective design claims: first, the court determines whether recovery is justified under the plaintiff's averment of the facts; second, if so, the jury decides whether the facts alleged by the plaintiff are true. *Azzarello,* 391 A.2d at 1026. In *Mackowick,* the Court extended *Azzarello* to failure-to-warn claims: "the determinations of whether a warning is adequate and whether a product is 'defective' due to inadequate warnings are questions of law to be answered by the judge." 575 A.2d at 102.

In *Tincher,* however, the Pennsylvania Supreme Court overruled *Azzarello* in defective design claims, holding that the threshold determination of whether a product is defectively designed is an issue "for the finder of fact, whether that finder of fact is judge or jury." *Tincher,* 104 A.3d at 407. Accordingly, the court in *Tincher* held that the question of defectiveness in design should be "removed … from the jury's consideration only where it is clear that reasonable minds cannot differ on the issue." *Id.* Citing judicial restraint, however, the court purposely left undecided whether this holding extends to failure-to-warn claims. *Id.* at 409.

Recently, the Pennsylvania Supreme Court granted allocator and is preparing to hear argument in a case that may resolve whether *Tincher* extends to failure-to-warn claims. Specifically, the question on appeal in *Amato v. Bell & Gosset, et al.,* is: "Whether, under the Court's recent decision in *Tincher* … a defendant in a strict-liability claim based on a failure-to-warn theory has the right to have a jury determine whether its product was unreasonably dangerous [because of inadequate warnings]." No. 448 EAL 2015, 2016 WL 381069 (Pa. Feb. 1, 2016) at *1. Currently, however, the Pennsylvania Supreme Court has not

As recognized by the court in *Mackowick*, a manufacturer is not required to educate a neophyte in the principles of the product. 575 A.2d at 102. Additionally, there is no duty to warn if the hazard is obvious and open. *See Riley,* 688 A.2d. at 226 n. 6 (Pa. Super. 1997). It also axiomatic that manufacturers are not required to warn against dangers that may arise if the stated warnings are not heeded. *See Davis v. Berwind Corp.,* 690 A.2d 186, 190 (Pa. 1997).

a.  Plaintiff's Strict Liability Failure To Warn Claims Against The Peggs Company Fails As A Matter Of Law

As noted, to prevail under strict liability, a "plaintiff must prove (1) that the product was defective, (2) that the defect existed when it left the hands of the defendant, and (3) that the defect caused the harm." *Riley,* 688 A.2d at 224.

First, as discussed above, there is no defect. Second there is no unobvious dangers inherent in the product of a two-tiered shopping cart and specifically this cart. Third plaintiff may recover only if "the lack of warning rendered the product unreasonably dangerous. The product is not "unreasonably dangerous" by any means and is within the variance of the two-tiered shopping cart market and not an outlier. Lastly, there is nothing in the record by plaintiff's testimony to establish the causation element in that the user of the product would have avoided the risk had he or she been warned of it by the seller. To the contrary the only evidence in the record on this point, is that plaintiff did not notice any warnings, not even those of the child seat for the cart. When plaintiff was asked generally if she saw any warnings or labels on the cart she was using that day, she stated, "No." <u>See</u> Plaintiff's Deposition Transcript Exhibit B at p. 45.

b.  Plaintiff's Warnings Claims based on Negligence Must Also Fail

To prevail in a negligence action, a plaintiff must show that the defendant owed a duty of care, the breach of which caused damages. *See Berrier v. Simplicity Mfg., Inc*., 563 F.3d 38, 61 (3d Cir. 2009). A manufacturer's fault must be shown. *See Dauphin Deposit Bank and Trust Co. v. Toyota Motor Co.*, 596 A.2d 845, 849-50 (Pa. Super. 1991). Moreover, the plaintiff must show that the absence or inadequacy of the warnings was the proximate cause of the injury. *See Moroney vs. General Motors Corp.*, 850 A. 2d

---

extended *Tincher* to failure-to-warn claims. Accordingly, the Court should apply *Mackowick* in failure-to-warn cases, which requires the Court to make the initial determination on the adequacy of the warning.

629, 633-34 (Pa. Super. 2004). The initial determination of the adequacy of a warning is a matter of law. *Pavlik*, 135 F.3d at 886.  For the reasons stated above, plaintiffs' negligence claims regarding warnings also fails.

### C.   There Was No Probability And Seriousness Of Risk Of Harm To Plaintiff As She Moved Her Cart Around The TJ Maxx

Plaintiff also pleads the risk-utility standard set forth in *Tincher*. See Plaintiff's Complaint ¶ 30. "The risk-utility test offers courts an opportunity to analyze post hoc whether a manufacturer's conduct in manufacturing or designing a product was reasonable, which obviously reflects the negligence roots of strict liability."  *Tincher* 103 A.3d at 389.   "The test offers a standard which, in typical common law terms, states that: a product is in a defective condition if a 'reasonable person' would conclude that the **probability and seriousness of harm** caused by the product outweigh the burden or costs of taking precautions."  *Tincher*, 103 A.3d at 389 (internal citations omitted; emphasis added).

The design of two-tier shopping cart presented no risk to plaintiff in this incident and no reasonable person would conclude a two tiered shopping cart poses a probability and seriousness of harm to an adult.

### 1.   As A General Matter, There Is A De Minimus Variation For Two-Tiered Shopping Carts

Defense Expert, John Morse, did examine and measure the differences in the handle and wheels of shopping carts not only of The Peggs Company, Inc. but a review of other carts in the Greater Pittsburgh Area and another cart in Dunkirk, NY where he resides.  The results of these findings is on pages 12 and 13 of his report, attached hereto as Exhibit "H".  As he reports the ranges vary in two-tier shopping carts from 1-1/4 inch to 3-3/8 inches from the handle forward of the wheels.  The outlier being the Bemis Cart in Giant Eagle and not The Peggs Company, Inc. cart in this matter. *Id.* Therefore, the variance in two-tiered shopping carts with a handle forward of the wheels would be a difference of 2 and 1/8 inches.

In addition, it is important to note that not only at the TJ Maxx in Cranberry, PA is the handle forward of the wheels, but also at the Giant Eagle locations (Seven Fields, McKees Rocks, Bridgeville and

15601301-1

Market District), Shop 'N Save locations (Cranberry, PA and Oakdale, PA) and the Fresh Thyme in Cranberry, PA.  These are all large grocery store chains serving the Pittsburgh area.

### 2.  There is No Reliable Evidence Supporting Plaintiffs' Claim That Their Proposed Alternative Designs

Plaintiff claims of an alternative designs would have prevented her from falling.  There is simply no evidence to support this claim. The video in this matter speaks for itself.  Never the less, plaintiff's foot is far inside than 2 inches when it strikes the rear caster of the shopping cart.  See TJ Maxx Surveillance Video at Exhibit "C".

Moreover, there is no evidence that the Plaintiffs' alternative designs would have eliminated or reduced the probability and seriousness of harm allegedly connected to the so- called "easy access" to the compartment's design.  As a general matter, Plaintiffs have conducted no testing on the subject incident cart other than to take a measurement.  Additionally, Plaintiffs' experts have conducted no testing on the cart, to establish that the present design was defective and unreasonably dangerous.  Dr. Bizzak conducted no such testing.  Nor did Dr. Bizzak address or take into account child safety and the tipovers of shopping carts in his analysis.  See Dr. Bizzak Reports 7/10/20 and 8/13/21 omitting child safety analysis Exhibit "F".   See Also, Deposition Transcript of Dr. Bizzak attached hereto as Exhibit "G".  Child Safety is "…paramount concern…"  Id. at p. 26. Dr. Bizzak can also not opine where the casters would have to be to prevent plaintiff from tripping on the day of the incident.  Id. at 23. He also cannot opine to where The Peggs Company, Inc.'s cart falls within the industry standards. Id at 28-29.

In short, there is no reliable testimony from Dr. Bizzak, or anyone else, to support the claim that an alternative design would eliminate or reduce the de minimis probability or seriousness of harm associated with the variation of handle to wheel distance.[2]

### D.  Under *Tincher,* A Strict Liability Design Defect Cause Of Action Requires Proof Of The Risk And Utility Of A Product, And An Analysis Of The Relevant Risk-Utility Factors In This Case Shows That Reasonable Minds Cannot Differ That There Can Be No Determination Of Design Defect.

---

[2] While not presently before the Court, the admissibility of the opinions of Plaintiff's expert Dr. David Bizzak is subject to a *Daubert* challenge given his questionable reliability and fit.

Under *Tincher*, a plaintiff pursuing a strict liability cause of action must prove that the product in question when it was placed in the stream of commerce would cause a reasonable person to conclude that the probability and seriousness of the harm caused by the product outweigh the burden of costs of taking precautions (the "risk-utility" standard).  *Tincher* 104 A.3d at 385-391.

As a preliminary matter, plaintiff did not produce any expert or witness regarding costs to make, design, manufacture or modify a shopping cart.  Plaintiff, also did not question defendant regarding costs to make, design, manufacture or modify a shopping cart.

Under a risk-utility analysis, relevant risk utility factors include the following:

(1)    The magnitude and probability of the foreseeable risks of harm to users of the product;

(2)    The usefulness, desirability and benefits of the product to persons such as the plaintiff, other users of the product, and the public in general as compared to the risks of injury, including the likelihood of injury and the seriousness of such injury;

(3)    The availability of a substitute product which would meet the same need and involve less risk, considering the effects that the substitute product would have on persons such as the plaintiff, other users of the product, and the public in general;

(4)    The relative advantages and disadvantages of the design at issue and the proposed alternative, including the effects of the alternative design on product costs, product longevity, maintenance, repair, and esthetics;

(5)    The mechanical feasibility of a different design and the economic consequences of a different design to both product users and the public generally;

(6)    The adverse consequences of, including safety hazards created by, a different design to persons such as the plaintiff, other users of the product, and the public in general.

(7)    The ability of the product's manufacturer to eliminate the alleged defect without impairing the product's usefulness, creating other risks of injury or making the component too expensive to maintain its desirability, utility and benefits;

(8)    The ability of product users to avoid the danger by the exercise of care in their use of the product;

(9)    The awareness of persons such as the plaintiff of the dangers associated with the use of the product, and their ability to know such dangers because of the general public's knowledge of the dangers, the obviousness of such dangers; or the ability to eliminate those dangers through training;

(10)    The nature and strength of consumer expectations regarding the product; and

(11)    The feasibility, on the part of the manufacturer of spreading the loss by setting the price of the product or carrying liability insurance.

*Tincher,* 104 A.3d at 389-91 (holding that Pennsylvania strict liability cause of action requires proof, in the alternative, either of the ordinary consumer's expectations or of the risk-utility of a product); *Dambacher v. Mallis*, 485 A.2d 408, 423 n.5 (Pa. Super. 1984)(en banc)(noting that risk/utility factors from Wade, "On the Nature of Strict Tort Liability for Products", 44 Miss.L.J. 825, 837-838 (1973), and *Barker v. Lull Engineering Co.,* 573 P.2d 443, 455 (Cal. 1978) are relevant to the "unreasonably dangerous" determination), *app. dismissed*, 500 A.2d 428 (Pa. 1985); Restatement (Third) Torts – Product Liability §2(b) cmt. F.

The magnitude and probability of the foreseeable risk of harm to an intended user is minimal if not zero for a tripping hazard. Mr. Brett Nelson of The Peggs Company stated they have never had a case previous to this matter where there was a complaint of a tripping issue. See Deposition Transcript of Brett Nelson attached hereto as Exhibit "E", at 58:20-22. Mr. Nelson also testified they did in store testing regarding cart use and never received complaints regarding a tripping issue. *Id*. at p. 40-41. In addition, Plaintiff's expert did not find any data regarding tripping on shopping carts. Defendant's expert Mr. Morse did not find any data on tripping over shopping carts either. See Deposition Transcript of Mr. Morse Exhibit "I" at p 39-40.

As to the usefulness, desirability and benefits of the product to persons such as the plaintiff, shoppers especially those buying smaller amounts of items from a retail establishment don't have to deal with a bulky cart in the store or aisles. Those customers don't have to deal with the weight of a single tier cart but the smaller and lighter cart. It stands to reason the public in general desired the use of a two-tier cart as they are more commonplace and came into being because of this demand. In addition, as discussed

above the risk of injury from tripping over a cart, including the likelihood of injury and the seriousness of such injury is minimal and has been almost zero but for this matter.

As to the third factor cited, there is simply no better substitute then a two-tier cart that is also equipped to and designed to take into account the leading injuries of shopping carts, which is the danger to children tipping over and falling out of the cart. Additionally, the risk to her and any adult from using a two tiered cart poses no serious risk of harm in the hands of an adult when utilizing the two tiered shopping cart in the proper manner.

On the other hand, as set forth above, Plaintiffs have proffered no evidence of the effectiveness of the alternative designs on utility, cost, and access by intended and unintended users.

In terms of the fifth factor, the mechanical feasibility of a different design and the economic consequences of a different design to both product users and the public generally, Plaintiffs' expert, Dr. Bizzak simply has presented his alternative designs as an untested and unverified "Ideal". He did no testing of his "ideal" to show that they were mechanically feasible, and he did no risk assessment of his "ideal" to prove the feasibility of the different designs that he proffered.

In terms of risk factors six and seven, there are substantial adverse consequences to his untested and unproven alternative designs. In addition, Dr. Bizzak admits he did not do any testing and did not take into account tip over injuries for shopping carts and found them irrelevant. Deposition Transcript of Dr. David Bizzak at p. 9.

Regarding the eighth and ninth factors, product users, could simply avoid the danger of the by not using a shopping cart at all. As noted in Mr. Morse's measuring of single basket shopping carts, even the two he looked at, one cart had the handle forward of the wheels.

No reasonable consumer would expect the two tier cart, as designed, to be any different. And the notion of spreading the loss to consumers and other users of two tier carts (or society) should be given no weight. Nor is there evidence from plaintiff of what that cost would be.

Given the analysis of all of these factors, reasonable minds cannot differ that the two-tiered cart as designed are not defective and unreasonably dangerous. *See Tincher*, 103 A.3d at 389-391.

12

**D. <u>Plaintiff's Own Contributory Negligence is a Bar to Recovery for General</u>**
   **<u>Negligence Claims</u>**

It is hornbook law in Pennsylvania that a person must look where he is going." <u>Villano v. Sec. Sav. Ass'n</u>, 268 Pa. Super. 67, 407 A.2d 440, 441 (Pa. Super. Ct. 1979).

Moreover, sale signs and displays do not alleviate Plaintiff's obligation to watch for obstacles and hazards. <u>See Campisi</u>, 915 A.2d at 121 ("[J]ust as drivers are not relieved of responsibility for accidents if they are distracted by billboards, customers are not relieved of the responsibility of watching for obstacles while they walk, even if they are distracted by sales displays.").

Also, "One is not required in walking along a traveled highway, to keep his eyes fastened upon the ground continually to discover points of possible danger; nor is it necessary that he should in order to avoid exposed pitfalls lying directly in the path before him; but the law does require that he be observant of where and how he is going so as to avoid dangers which ordinary prudence would disclose." *Lerner v. Philadelphia*, 221 Pa. 294, 297, 70 A. 755, 756 (1908).

In this matter it is admitted by plaintiff that she was not looking where her foot contacted the shopping cart but looking at the tea towels further up the aisle.  <u>See</u> Deposition Transcript of Plaintiff at p. 21 and 22. <u>See also</u> TJ Maxx Surveillance Video of Plaintiff, not looking where she was going.

(<u>See</u> *Rosati v. United States*, No. 18-3349, 2019 U.S. Dist. LEXIS 81742 (E.D. Pa. May 15, 2019), [defendant] meets with innumerable social security applicants (Beale's is "a very high demand position"). (Beale Dep. 13; Pl.'s Mem. Supp. Resp. 4.) Yet, there is no evidence that an accident like Plaintiff's ever occurred before". *Id*. at *13.)

(See also, *Druding v. Philadelphia*, 374 Pa. 202, 205, 97 A.2d 365, 367 (1953) ("Where a person dives into a pool at a point where the water is only up to a bather's knees and fails to look or if he looked fails to notice and avoid such an obvious danger he is guilty of contributory negligence as a matter of law.))

## IV.    REQUESTED RELIEF

Based on the foregoing, there are no genuine issues of material fact regarding any defect of The Peggs Company, Inc's two-tiered cart, under both the Consumer Expectation Test and Risk Utility Test.  Also there is no evidence to show any lack of warnings made this cart unreasonably dangerous and no evidence in the record that there is causal link between no warning and the plaintiff's injury.  Lastly, plaintiff's own negligence of not paying attention to where she was going renders her contributorily negligent to a point to bar her from recovery on that count.  Therefore, Defendant, The Peggs Company, Inc., requests this Honorable Court enter the attached Order granting summary judgment in their favor and dismissing all claims with prejudice.

Respectfully submitted:

By:   */s/ Thomas DiStefano*
Thomas DiStefano, Esq.
PA I.D. No.: 202847
Rawle & Henderson LLP
The Henry W. Oliver Building
535 Smithfield Street Suite 1000
Pittsburgh, PA 15222
tdistefano@rawle.com
Phone: 412-261-5704
*Counsel for Defendant,*
*The Peggs Company, Inc.*

January 14, 2022

15601301-1