IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEBORAH DAVIDSON, | ) |
|     Plaintiff, | ) |
| vs. | ) |
| | )   Civ. A. No. 20-1641 |
| THE PEGGS COMPANY, INC., | ) |
|     Defendant. | ) |

### **MEMORANDUM OPINION**[1]

Plaintiff Deborah Davidson ("Davidson") brought this products liability action after she tripped and fell using a shopping cart designed by Defendant The Peggs Company, Inc. ("Peggs"). (ECF No. 1.) Davidson alleges the shopping cart was defective and dangerous because the wheels of the cart extended 2 1/4" beyond its handle. She brings claims for strict liability (design defect), failure to warn, and negligence. (ECF No. 1-1.)

Pending before the Court is a motion for summary judgment filed by Peggs. (ECF No. 19.) For the reasons set forth below, Peggs' motion will be granted in part and denied in part.

**I.  Relevant Procedural History**

Davidson commenced this three-count action in the Court of Common Pleas of Allegheny County, Pennsylvania on October 7, 2020. (ECF Nos. 1 ¶ 1; 1-1.) Peggs subsequently removed the action to federal court on the basis of diversity jurisdiction. (ECF No. 1.) After it filed an Answer (ECF No. 3), the parties engaged in fact discovery, exchanged expert reports, and conducted expert discovery.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case. Thus, the undersigned has the authority to decide dispositive motions and enter final judgment.

1

After the close of expert discovery, Peggs filed a motion for summary judgment, a supporting brief, and a concise statement of material facts with supporting exhibits. (ECF Nos. 19-21.) Davidson submitted a response in opposition, a responsive concise statement of material facts that included additional material facts, and a supporting appendix. (ECF Nos. 22-23.) Peggs thereafter submitted a reply along with a response to Davidson's additional material facts.[2] (ECF Nos. 24-25.) Thus, Peggs' dispositive motion has been fully briefed and is ripe for disposition.

II.     **Relevant Factual Background**

   A.  Events of February 20, 2020

Davidson has been a customer of TJ Maxx for twenty years and shops weekly at its Cranberry, Pennsylvania store. (ECF Nos. 21 ¶ 2; 23 ¶ 2.) On February 20, 2020, Davidson arrived at TJ Maxx sometime between 6:00 p.m. and 7:00 p.m. (ECF Nos. 21 ¶¶ 1, 4; 23 ¶¶ 1, 4.) Throughout her visit, the store was well lit and nothing obstructed her view. (ECF Nos. 21 ¶ 5; 23 ¶ 5.) Upon entry, she selected a KNE 079 two-tiered shopping cart manufactured by Peggs. (ECF Nos. 21 ¶ 1; 23 ¶¶ 1, 27; 25 ¶ 27.) She did not observe any warnings or labels on the cart. (ECF Nos. 21 ¶ 6; 23 ¶ 6.) Even though she had previously used one of TJ Maxx's two-tiered shopping carts, typically she opts for a single-tiered shopping cart. (ECF Nos. 21 ¶ 3; 21-3 at 2-3; 23 ¶ 3.)

After an hour of shopping, Davidson proceeded to the checkout line. (ECF Nos. 21 ¶ 4; 23 ¶ 4.) While waiting to checkout, she began speaking to the woman behind her when she noticed a tea towel hanging on a display. (ECF Nos. 21 ¶ 7; 23 ¶ 7.) As Davidson turned to grab the towel, she tripped over the rear caster of her shopping cart and fell to the ground, sustaining various

---

[2] Peggs' reply brief exceeds the five pages allowed pursuant to the undersigned's Practices and Procedures. *See Practices and Procedures of Magistrate Judge Dodge*, § II(B)(3). Davidson has not objected to the brief and as such, the Court will consider the reply in its entirety. Peggs is reminded that it must seek leave prior to filing a brief that is not compliant with the undersigned's Practices and Procedures.

injuries.  (*Id.*)  Her injuries included humerus and subcapital hip fractures that required surgery.  (ECF Nos. 23 ¶ 49; 25 ¶ 49.)

Although some of Peggs' other shopping cart models have been the subject of litigation, to date, this is the only lawsuit relating to the KNE 079 involving a trip and fall.  (ECF Nos. 21 ¶¶ 14, 19; 23 ¶¶ 14, 19.)

### B.  Liability Experts[3]

The parties have proffered conflicting expert reports and deposition testimony.  Plaintiff's expert, Dr. David J. Bizzak, opines with a reasonable degree of engineering certainty that (1) the design of the KNE 079 cart presents a potential tripping hazard because of the location of the handle relative to the position of the rear casters; (2) this risk of harm was greater than shopping carts that have the handle nearer to the edge or behind the rear casters; and (3) this defect was the proximate cause of Davidson's trip and fall.  (ECF No. 21-7 at 4, 14.)

Prior to reaching these conclusions, Dr. Bizzak reviewed two surveillance videos and went to the TJ Maxx store where Davidson had fallen (in addition to other stores in the Pittsburgh area).  (*Id.* at 2, 11.)  At the Cranberry TJ Maxx store, he observed two different types of shopping carts, single-tiered and double-tiered.  (*Id.*)  He observed that the handle on the single-tiered cart was located about 5/8" inboard of the rear casters, but the difference was approximately 2 1/4" on the double-tiered cart.  (*Id.* at 3, 12.)  While he states that there are no standards for shopping carts in the United States with respect to tripping hazards, Dr. Bizzak opines that shopping cart designers should consider this factor, in addition to other concerns like tip-over risk, because customers pushing a shopping cart through a store will frequently move laterally to retrieve merchandise.

---

[3] Davidson has also submitted the expert report of Dr. Bernard Pegis concerning her medical injuries. (ECF No. 23-12.)  This report is not relevant for purposes of resolving the present motion.

(*Id.*; ECF No. 21-8 at 25.) In addition, the focus of their attention is on the store's merchandise, not the floor. (*Id.*) For these reasons, it is his expert opinion that a shopping cart's rear casters should be located forward of the handles to prevent store customers from tripping over them should they move away from the cart to retrieve or inspect merchandise. He points to a VersaCart as an example of a shopping cart on the market that conforms with this requirement. (ECF No. 21-7 at 3-4, 12-13.) He also suggests TJ Maxx (Bridgeville) and the Bed Bath & Beyond (Robinson) have double-tiered carts with handles behind the rear casters. (*Id.* at 13.)

In contrast, defense expert, Dr. John Morse, opines with a reasonable degree of engineering certainty that the cart at issue was not defective and that a minor movement of the cart's handle would not have prevented Davidson's fall. (ECF No. 21-9 at 18, 19.) Like Dr. Bizzak, he reviewed surveillance footage and went to the TJ Maxx where Davidson had fallen, as well as other stores in Pittsburgh and New York. (*Id.* at 4.)[4] He noted there is great variability among shopping carts with respect to the distance between the handle and the rear casters. (*Id.* at 13-15; ECF No. 21-10 at 34.) Specifically, he found the distance to be as small as 3/8" and as great as 3 3/8". (ECF No. 21-9 at 14-15.) Because the vast majority of shopping cart accidents are the result of the cart being tipped over, Dr. Morse posits that Dr. Bizzak's opinion is deficient because he did not render a numerical value as to what would be an appropriate distance between the rear caster and the handle to reasonably reduce a tripping hazard before the cart becomes dangerous as a tipping risk. (*Id.* at 5-6, 15-16.)

---

[4] He also reviewed depositions, Dr. Bizzak's expert reports, the complaint, materials exchanged in discovery, the store incident report, a list of stores that have these carts, the patent, various industry standards, news articles and journals, photographs and testing of other carts, and the cart's safe use and maintenance guide. (ECF No. 21-9 at 19-20.)

### III. <u>Legal Standard</u>

As the Federal Rules of Civil Procedure provide, summary judgment must be granted if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of identifying evidence which shows the lack of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Id.* (internal citation omitted). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court of Appeals has held that "where the movant bears the burden of proof at trial and the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." *Nat'l State Bank v. Fed. Rsrv. Bank of New York*, 979 F.2d 1579, 1582 (3d Cir. 1992) (internal citation and quotation omitted).

In following this directive, a court must take the facts in the light most favorable to the non-moving party and must draw all reasonable inferences and resolve all doubts in that party's favor. *Hugh v. Butler Cty. Fam. YMCA*, 418 F.3d 265, 267 (3d Cir. 2005); *Doe v. Cty. of Ctr., Pa.*, 242 F.3d 437, 446 (3d Cir. 2001).

### IV. <u>Discussion</u>

Peggs moves for summary judgment on each of Davidson's claims. In her response,

Davidson states she is no longer "pursuing a claim for failure to warn under either a theory of strict liability or a theory of negligence." (ECF No. 22 at 4.) Therefore, the Court will grant Peggs' motion as it relates to these claims.

For the reasons set forth below, the motion for summary judgment will be denied as to the remaining claims of strict liability and negligence that are premised on a design defect.

### A. Strict Liability

Pennsylvania follows Section 402A of the Second Restatement of Torts. *High v. Pennsy Supply, Inc.*, 154 A.3d 341, 346 (Pa. Super. Ct. 2017). Consequently, "[f]or a plaintiff to establish a strict liability claim, [she] must prove (1) 'the product was defective'; (2) 'the defect was a proximate cause of [her] injuries'; and (3) 'the defect causing the injury existed at the time the product left the seller's hands." *Cote v. U.S. Silica Co.*, 572 F. Supp. 3d 84, 103 (M.D. Pa. Nov. 16, 2021) (quoting *Sikkelee v. Precision Airmotive Corp.*, 907 F.3d 701, 709-10 (3d Cir. 2018)). In moving for summary judgment, Peggs challenges the first element by arguing that no reasonable factfinder could conclude its product was defective.

In the landmark case of *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014), the Supreme Court of Pennsylvania explained that the determination of whether a product is in a defective condition unreasonably dangerous to the customer is generally reserved for the factfinder. *Id.* at 407; *High*, 154 A.3d at 347. It further explained there are two pathways by which a plaintiff may demonstrate a defective condition: the consumer expectations standard and the risk-utility standard. *Tincher*, 104 A.3d at 417. Peggs argues Davidson cannot meet her burden under either theory. (ECF No. 20.)

1. <u>Consumer Expectations Standard</u>

Peggs argues that its two-tiered shopping cart is not defective because a reasonable customer would anticipate and appreciate the dangerous condition of the product and the attendant risk of injury. (ECF No. 2 at 3-5.) It explains that the cart's design is similar to many other shopping carts in that the handle is set off from the wheels to prevent it from tipping over when a child is seated inside. (*Id.*) In addition, the anticipated user is older teenagers and adults, and Davidson was an experienced and avid shopper. (*Id.*) Moreover, customers' intended use of the shopping cart is to place items in the cart as they shop, and one of the advantages of a two-tiered cart is that it is easier to navigate around a store. (*Id.*) Peggs further represents that it made no express or implied warranties here. (*Id.*) Finally, it asserts, because the shopping cart at issue had a distance of only 2 1/4" between the rear casters and the handle and carts in the Pittsburgh area range from 3/8" to 3 3/8", an ordinary consumer would reasonably anticipate the location of the casters. (*Id.*)

Davidson responds that in cases where jurors have an experiential basis, such as with the use of shopping carts in a store, it is for the jury to decide what the consumer's expectations are. (ECF No. 22 at 6.) She also argues that because a shopping cart must be suitable and safe for maneuvering around a retail environment, it must be adequately designed for that purpose. (*Id.* at 7). Further, she contends that adult shoppers typically do not inspect a cart to determine the location of the wheels relative to the handle prior to use. (*Id.*) For these reasons, she argues that the factfinder should decide whether the protruding wheels of the KNE 079 are beyond the expectation of ordinary consumers. (*Id.* at 6-7.)

Peggs replies that Davidson has offered no support for her theory that the handles should be at least flush with the wheels and notes there is great variability as to the distance of the wheels and the handles on shopping carts even in the Pittsburgh area. (*Id.* at 6-7.)

Under the consumer expectations test, a "product is in a defective condition if the danger is unknowable and unacceptable to the average or ordinary consumer." *Tincher*, 104 A.3d at 394; *Commw. v. Monsanto Co.*, 269 A.3d 623, 657 (Pa. Commw. Ct. 2021). Said differently, "[a] product 'is not defective if the ordinary consumer would reasonably anticipate and appreciate the dangerous condition of the product and the attendant risk of injury of which the plaintiff complains.'" *Cote*, 572 F. Supp. 3d at 104 (quoting *Tincher*, 104 A.3d at 394). Thus, the consumer expectations standard "defines a 'defective condition' as a condition, upon normal use, dangerous beyond the reasonable consumer's contemplations." *Tincher*, 104 A.3d at 394. It does this by measuring "the competing interests of consumers and sellers . . . from the perspective of the reasonable consumer." *Lehmann v. Louisville Ladder Inc.*, Civ. A. No. 21-4626, 2022 WL 2670811, at *3 (E.D. Pa. July 11, 2022) (quoting *Tincher*, 104 A.3d at 387). Notably, this standard is only applicable "where the question of how safely the product should have performed can be answered by the common experience of its users." *Monsanto*, 269 A.3d at 657.

To determine a reasonable consumer's expectations, courts consider "'[t]he nature of the product, the identity of the user, the product's intended use and intended user, and any express or implied representations by a manufacturer or other seller.'" *Cote*, 572 F. Supp. 3d at 104 (quoting *Tincher*, 104 A.3d at 394-95). Quoting the Second Restatement of Torts, the Superior Court has further explained:

> Many products cannot possibly be made entirely safe for all consumption, and any food or drug necessarily involves some risk of harm, if only from over-consumption. Ordinary sugar is a deadly poison to diabetics, and castor oil found use under Mussolini as an instrument of torture. That is not what is meant by

8

> "unreasonably dangerous" in this Section. The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.

*High*, 154 A.3d at 348-49 (quoting Restatement (Second) of Torts, § 402A, cmt. i).

While the parties agree that the shopping cart at issue was designed for customers shopping at TJ Maxx, they disagree regarding whether the ordinary consumer would appreciate the danger of tripping based on the location of the wheels in relation to the handle. The Court concludes that under the facts at issue here, this matter cannot be determined as a matter of law, thereby requiring the factfinder to make this determination. Whether it is reasonable to conclude that a customer would choose one type of cart over the other based on the location of its wheels is up to the jury. Similarly, whether a frequent shopper like Davidson is expected to note this specific difference and choose accordingly is also a jury question. Further, based upon the nature of the product's intended use for shopping in a store with multiple displays, including displays at the checkout line, a factfinder could conclude that an ordinary shopper would be focused on potential products for purchase rather than the juxtaposition of the wheels and handle or the location of their feet while doing so.

Notably, there are competing expert opinions concerning the safety of the design of the shopping cart that Davidson was using.[5] Simply stated, Dr. Bizzak's opinion is that the cart was unreasonably dangerous given the distance of the rear casters relative to the handle, an opinion with which Dr. Morse disagrees. Dr. Bizzak opines that given the manner in which customers shop and the focus of a typical shopper, the rear casters of a shopping cart should be located

---

[5] In a footnote, Peggs states that it plans to challenge the reliability and fit of Dr. Bizzak's expert opinion prior to trial. (ECF No. 20 at 9 n.2.) As it has not done so in the context of its motion for summary judgment, however, the Court has considered the opinions of both experts in connection with resolving Peggs' motion.

forward of the handle. Thus, it will ultimately be up to the factfinder to determine the weight that it gives to his opinions and those of Dr. Morse.

Thus, whether an ordinary consumer would appreciate the alleged dangerous condition of the Peggs' cart must be determined by the jury. As such and given that the Court must resolve all doubts in favor of the non-moving party, Peggs is not entitled to summary judgment on the consumer expectations theory.

Because Davidson may proceed under either the consumer expectations or risk-utility standard, it is not necessary to reach Peggs' second argument. However, as discussed below, Peggs similarly has not demonstrated that it would be entitled to summary judgment when the risk-utility standard is applied.

2. Risk-Utility Standard

Peggs also argues that no reasonable juror could conclude that its shopping cart posed any risk to Davidson or that it poses a probability and seriousness of harm to adults generally. (ECF No. 20.) Before turning to the elements of the risk-utility test, Peggs makes the following observations: (1) its cart was within the normal threshold for handle-caster distance in two-tiered shopping carts in Pittsburgh and (2) Davidson has pointed to no reliable evidence to support her claim that an alternative design would have eliminated or reduced her probability of tripping thereby reducing the risk of the seriousness of the harm. (*Id.*) It further explains Dr. Bizzak's opinions are insufficient because he conducted no testing on the cart, did not factor in child safety and tip-over risk in his analysis, did not opine where the casters should have been to prevent Davidson from falling, and did not offer an opinion as to whether the cart fell below industry standards. (*Id.*)

With respect to the risk-utility factors, Peggs first asserts that harm was not foreseeable because, among other things, no one other than Davidson has brought a lawsuit against it after tripping over the rear caster. Additionally, the KNE 079 cart allows shoppers to purchase smaller amounts of items without having to navigate the aisles with a heavy, bulky cart. Further, Davidson has not pointed to an alternative design that considers the danger that shopping carts pose to children and there is no risk, generally, to an adult who uses a shopping cart correctly. Peggs also notes that Dr. Bizzak offered no expert opinion concerning the mechanical feasibility and economic consequences of a different design. Further, there are substantial adverse consequences to Dr. Bizzak's unproven alternative designs given that he did not do any testing or account for tip-over injuries. Lastly, shoppers could simply avoid the danger by not using the cart. (*Id.* at 9-12.)

Davidson advances three reasons that demonstrate the flaws in Peggs' contentions. (ECF No. 22 at 8-9.) First, she notes that viable alternative designs are in the marketplace and in fact, are produced and distributed by Peggs. Thus, it would be easy to choose a slightly different piece, angle, or length for the handle. Moreover, Peggs' rationale is flawed because it does not consider the risk-utility of the KNE 079 cart, and instead, focuses on the risk-utility of two-tiered carts generally. (*Id.* at 9.) Finally, as to Peggs' argument relative to the lack of accidents, she notes that the KNE 079 was only sold to one store over a three-year period. (*Id.*)

In reply, Peggs asserts that Davidson has ignored many of the risk-utility standard factors and has not produced an expert witness to testify as to the cost to make, design, manufacture or modify its shopping cart. (ECF No. 24.) It also argues that cart safety requires more than just a comparison of the distance between wheels and handles. Concerning Davidson's argument that the cart only went to one store and was used on the market between 2013 and 2016, Peggs notes

11

that the cart was sold to TJ Maxx stores throughout the country, is still in use in many of them, and there is only one known instance where a user tripped and fell. (*Id.*)

The risk-utility balances the seller's interests versus consumer's interests "from the perspective of the reasonable seller." *Tincher*, 104 A.3d at 394. As such, "a product is in a defective condition if a 'reasonable person' would conclude that the probability and seriousness of harm caused by the product outweigh the burden or costs of taking precautions." *Id.* at 397. The Supreme Court of Pennsylvania has identified the following factors as relevant to the risk-utility analysis:

> (1) The usefulness and desirability of the product—its utility to the user and to the public as a whole.
>
> (2) The safety aspects of the product—the likelihood that it will cause injury, and the probable seriousness of the injury.
>
> (3) The availability of a substitute product which would meet the same need and not be as unsafe.
>
> (4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.
>
> (5) The user's ability to avoid danger by the exercise of care in the use of the product.
>
> (6) The user's anticipated awareness of the dangers inherent in the product and their availability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions.
>
> (7) The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.

*Id.* The Supreme Court of Pennsylvania further cautioned that

> when a plaintiff proceeds on a theory that implicates a risk-utility calculus, proof of risks and utilities are part of the burden to prove that the harm suffered was due to the defective condition of the product. The credibility of witnesses and testimony offered, the weight of evidence relevant to the risk-utility calculus, and whether a party has met the burden to prove the elements of the strict liability cause of action are issues for the finder of fact, whether that finder of fact is judge or jury. A

>question of whether the party has met its burden of proof is properly "removed"—for example, via adjudication of a dispositive motion—"from the jury's consideration only where it is clear that reasonable minds [cannot] differ on the issue." *Hamil v. Bashline*, 392 A.2d 1280, 1284-85 (Pa. 1978).

*Tincher*, 104 A.3d at 428.

Here, there is sufficient evidence for a jury to decide that the seriousness of the harm outweighs the burden or cost of taking precautions. Both experts agree that there are other double-tiered shopping carts in the market which are designed so that the handle and the wheels are closer to being flush, including one that was used at the same TJ Maxx store where Davidson fell. This suggests the availability of a substitute product that would not impair the usefulness of the cart. Further, given the handle/ caster variability in the marketplace, a reasonable factfinder could find that the cart's danger was not obvious. While other users may not have been injured using the cart and the product may help users navigate TJ Maxx more effortlessly, summary judgment is not appropriate here for the reasons already stated.

Accordingly, Peggs' motion for summary judgment as to Davidson's strict liability (design defect) claims will be denied.

### B. Negligence

Peggs contends that Davidson's "contributory negligence" bars recovery for her negligence claim because by her own admission, Davidson was looking at merchandise and not at her feet when her foot came into contact with the rear caster. (ECF No. 20 at 13-14.) Davidson responds a reasonably prudent person could easily fail to notice the wheel given that it was offset 2 1/2" beyond the handle, a fact that is especially true in a store where the environment is commercially designed to draw the attention of the shoppers to the merchandise on display. (ECF No. 22 at 4.) She further argues that Peggs' argument about contributory negligence is misguided as Pennsylvania is a comparative negligence jurisdiction. As such, even if her conduct contributed

13

to her injuries, she argues this alone is insufficient to defeat her claim on summary judgment. (*Id.* at 4-5.)

Peggs replies that the facts of this case are analogous to *Rosati v. United States*, Civ. A. No. 18-3349, 2019 WL 2121083 (E.D. Pa. May 15, 2019), in which the district court granted summary judgment finding the plaintiff "fell because of her own clumsiness." (ECF No. 24 at 1-5.) Just as in *Rosati*, Peggs asserts, Davidson complains of a cause that she was previously able to navigate without issue. Moreover, Davidson was a frequent shopper, had shopped at the same store every week for twenty years, had prior experience using the two-tiered shopping cart, had been using the same cart for an hour prior to falling, and like any reasonable person, should have paid attention to the location of the wheels on the cart. (*Id.*)

Pursuant to Pennsylvania's comparative negligence statute, a plaintiff may recover damages even though negligent provided that her negligence "*was not greater than the causal negligence of the defendant* . . . but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff." 42 Pa. Stat. Ann. and Con. Stat. Ann. § 7102(a) (emphasis added).

Ordinarily, questions of comparative negligence are reserved for the jury. *Bouchard v. CSX Transp., Inc.*, 196 F. App'x 65, 70 (3d Cir. 2006) (citing *Gilbert v. Consol. Rail Corp.*, 623 A.2d 873, 876 (Pa. Commw. Ct. 1993)). Therefore, summary judgment may only be granted where "facts so clearly reveal the plaintiff's negligence [such] that reasonable minds could not disagree as to its existence.'" *Bennett v. Dollar Gen., Inc.*, Civ. A. 19-03214, 2020 WL 3934971, at *5 (E.D. Pa. July 13, 2020) (quoting *O'Brien v. Martin*, 638 A.2d 247, 249 (Pa. Super. Ct. 1994)).

Peggs' assertion that Davidson's negligence bars her claim as a matter of law is without merit. It is certainly possible that a factfinder could conclude that Davidson's own conduct

contributed to her injuries. If so, it would then be necessary to decide whether her negligence was greater than any negligence attributed to Peggs. This is a classic jury question and under the facts presented here, the Court cannot conclude as a matter of law that Davidson's claim is barred by her comparative negligence. Whether Davidson's fall was caused solely because she carelessly reached for merchandise while in a checkout line, solely because of the negligent positioning of the wheels of the shopping cart, or some combination of the two is a matter for the jury to determine. *See Bennett*, 2020 WL 3964971, at *1, *5 (denying summary judgment because "[a] reasonable juror could conclude that [p]laintiff, although distracted, was not comparatively negligent" in failing to notice a "caution wet floor" sign and walk off mat "because it was appropriate for him to hold the door for his family member"). While Peggs cites a number of cases in support of its argument that summary judgment must be granted, the Court is not persuaded that they are sufficiently analogous to demonstrate that Davidson was more than 50% negligent such that summary judgment is warranted.

Therefore, Peggs' motion for summary judgment as to Davidson's negligence claim will be denied.

## V. Conclusion

For these reasons, Peggs' motion for summary judgment (ECF No. 19) will be granted in part and denied in part. An appropriate order follows.

Dated: August 30, 2022                    BY THE COURT:

                                          s/Patricia L. Dodge
                                          PATRICIA L. DODGE
                                          United States Magistrate Judge